120 S.E.2d 529 (1961)
255 N.C. 162
AMERICAN BRIDGE DIVISION UNITED STATES STEEL CORPORATION, Plaintiff (and Ready-Mixed Concrete of Dunn, Inc., Additional Plaintiff by way of Statutory Joinder and Intervention),
v.
E. P. BRINKLEY and United States Casualty Company, Defendants.
No. 536.
Supreme Court of North Carolina.
June 16, 1961.
*531 Stanley Winborne, Vaughan S. Winborne, and Samuel Pretlow Winborne, for appellant.
Smith, Leach, Anderson & Dorsett, Raleigh, for appellee.
RODMAN, Justice.
Our Constitution contains a mandate directing the General Assembly to enact legislation to give mechanics and laborers a lien on the subject matter of their labor. N. C. Constitution, Art. XIV, § 4. Public policy prohibits the acquisition of liens for labor or materials used or furnished in the construction of a public edifice or way. Noland Co. v. Board of Trustees, 190 N.C. 250, 129 S.E. 577, and cases there cited.
The General Assembly has, by the enactment of G.S. § 44-14 and G.S. § 136-28, given to laborers and materialmen engaged in public construction a substantial equivalent to the lien given laborers and materialmen engaged in private construction. The surety on the bond is, for practical purposes, the substitute for the lien. John I. Roper Lumber Co. v. Lawson, 195 N.C. 840, 143 S.E. 847, 67 A.L.R. 984; Robinson Mfg. Co. v. Blaylock, 192 N.C. 407, 135 S.E. 136. Just as the statutes fix the manner of enforcing liens against private construction, the statutes dealing with surety bonds given for public construction *532 provide how the laborer or materialman may enforce his rights, A civil action may be brought on the bond in the county in which the contract was performed. This action is in effect a creditor's action to determine the rights of all claimants to a fund to be provided by the surety not to exceed the penal sum of the bond. Hunt Manufacturing Co. v. Hudson, 200 N.C. 541, 157 S.E. 799; Bond v. Pickett Cotton Mills, 166 N.C. 20, 81 S.E. 936.
When, as here, the bond is given to assure payment of labor and material entering into the construction of a State highway, the institution of the action must await the completion of the contract, and a beneficiary of the bond provisions who would not be barred from benefiting thereby must file a statement of his claim with the contractor and the surety within six months from the completion of the contract. G.S. § 136-28.
When a claimant-beneficiary under this statutory provision brings his action, the procedure to be followed to enforce payment of a sum not to exceed the penal sum of the bond and distribution of this sum among claimants is that prescribed by G.S. § 44-14.
A creditor's action is appropriate to fix priorities and the portion to which each creditor is entitled with respect to a fund claimed by several. All claimants to the fund are proper parties and should be before the court so that it may determine priorities, the sum of valid claims, and the percentage each claimant is entitled to receive if the fund is insufficient to pay all in full. Fisher v. Worth, 45 N.C. 63; McIntosh, N. C. P. & P., 2d ed., § 2475.
To prevent unreasonable delay in directing distribution of the fund, the subject of a creditor's action, courts have and exercise the power to fix a time within which creditors must present their claims in order to participate in any distribution ordered. Notice of this time limitation should be given all who might be claimants. The usual manner of giving notice is by publication in a newspaper selected so as to probably inform claimants of the time fixed.
In actions on bonds of the character here involved, the Legislature imposed the duty on the plaintiff of notifying claimants "of the pendency of the suit, the name of the parties, with a brief recital of the purposes of the action * * *." That duty is performed by publishing a notice accurately informing claimants how they may protect their rights. The statute further provides: "All persons entitled to bring and prosecute an action on the bond shall have the right to intervene in said action, set up their respective claims, provided that such intervention shall be made within six months from the bringing of the action, and not later." The time limit so fixed was, in our opinion, not intended to diminish the fund available to claimant or to relieve the surety of the obligation which it had been paid to discharge. That obligation could, by the terms of the statute, be discharged by paying the amount of the bond into court. The time limitation was intended merely to permit prompt distribution of the sum owing by the surety.
Notwithstanding notice to a creditor in the manner described by a court order and partial distribution of the fund among creditors who have filed within the time fixed, courts have permitted creditors who have not so filed to intervene and assert their claims against any surplus. The language of Lord Eldon, quoted in Glenn v. Farmers' Bank, 80 N.C. 97, is we think, appropriate in interpreting legislative intent from the language used. He said: "Although the language of the decree, when an account of debts is directed, is that those who do not come in shall be excluded from the benefit of that decree, yet the course is to permit a creditor, he paying the costs of the proceedings, to *533 prove his debt as long as there happens to be a residuary fund in Court or in the hands of an executor, and to pay him out of that residue. If a creditor does not come in till after the executor has paid away the residue, he is not without remedy, though he is barred the benefit of that decree." To like effect see Odell Hardware Co. v. Holt-Morgan Mills, 173 N.C. 304, 92 S.E. 6.
We need not here determine whether the Legislature, having imposed a duty on claimants to file their claim with the surety, intended thereby to impose a duty on the surety to inform the court who are claimants and hence should be made parties.
It is, we think, manifest that the notice which was published by plaintiff as quoted in the statement of facts was not a compliance with and did not meet the requirements of G.S. § 44-14. It contemplates notice which informs, not a notice which misinforms. Plaintiff's action was begun 15 December. By the express language of the statute the notice should have informed claimant that it might intervene at any time prior to 15 June 1959. To the contrary, the notice was that it might intervene within six months from 13 August 1958. It cut short by four months the time claimants had to intervene and participate in the distribution of the fundpenal sum of the bond. Manifestly the surety company, with knowledge of the claim which it failed to disclose to the court, cannot profit from the notice as published. Bank of Wadesboro v. Jordan, 252 N.C. 419, 114 S.E.2d 82; Menzel v. Menzel, 250 N.C. 649, 110 S.E.2d 333; Board of Com'rs of Roxboro v. Bumpass, 233 N.C. 190, 63 S.E.2d 144; Scott & Co. v. Jones, 230 N.C. 74, 52 S.E.2d 219; Brett v. Davenport, 151 N.E. 56, 65 S.E. 611; 72 C.J.S. Process § 69, p. 1102.
G.S. § 1-108 is indicative of legislative policy not to bar claimants to a fund by service of process by publication when they may be accorded their just rights without injuriously affecting innocent parties.
By the terms of the statute, G.S. § 136-28, the Highway Commission is entitled to priority in the monies to be paid by the surety company. After it has been paid, the balance should be paid to claimants who establish their claims. Presumably the bond provided ample monies to discharge all claims of the Highway Commission and laborers and materialmen now unpaid. If so, appellant is entitled to be paid the amount of its debt. If not, appellant is, since the notice was not sufficient to meet statutory requirement, entitled to participate with other laborers and materialmen in such balance as may remain after discharging any claims of the Highway Commission.
Reversed.